IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| TONY HORTON, KISHA HORTON, ) <br> Individually and as Guardians ) <br> ad litem for T.H., a minor, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> _____ ) | C.A. No. 3:13-cv-947-CMC <br><br> ORDER AND OPINION <br> ON DEFENDANT'S <br> MOTION TO DISMISS |

This matter is before the court on motion of Defendant, the United States of America ("Government"), to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). ECF No. 52. For reasons set forth below, the court grants the Government's motion and dismisses this action for lack of subject matter jurisdiction.

## BACKGROUND

This environmental tort action, brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, seeks recovery for injuries resulting from contamination of the groundwater under Plaintiff's property near Shaw Air Force Base ("Shaw AFB") in Sumter, South Carolina. ECF No. 1 (Complaint).

Shaw AFB is a military air base near Sumter, South Carolina that is operated by the United States Air Force. In 1941, construction began at the base, which was originally named Shaw Field. In 1948, Shaw Field was redesignated Shaw AFB. Since 1941, Shaw AFB has actively supported the military's missions in conflicts and crises, including World War II, the Korean War, the Cuban Missile Crisis, the Vietnam War, the Persian Gulf War, and the Iraq War. Like many military

installations, Shaw AFB's waste disposal practices have caused environmental contamination, including groundwater contamination of wells located off base. For example, in 1989, the State of South Carolina discovered some off-base wells were contaminated with trichloroethylene ("TCE"), which is "a toxic organic solvent, known to be used by the military as a degreasing agent." Perchloroethylene ("PCE") has also been discovered in certain groundwater off base.[1]

In 1975, the United States Department of Defense developed a nationwide Installation Restoration Program ("IRP") to investigate and remediate environmental contamination on or near military installations. In the 1980's, the Department of Defense began investigating and remediating contamination at Shaw AFB under the IRP. In the late 1970's and 1980's, Congress enacted environmental legislation including the Safe Drinking Water Act ("SDWA"); the Clean Water Act ("CWA"); the Comprehensive Response, Compensation and Liability Act ("CERCLA"); the Superfund Amendments and Reauthorization Act ("SARA"); and the Resource Conservation and Recovery Act ("RCRA"). Regulations implementing those statutes addressed TCE and PCE: TCE and PCE were regulated as toxic pollutants pursuant to the Clean Water Act in 1978, as hazardous wastes under RCRA in 1980, and as drinking water contaminants under the Safe Drinking Water Act in 1989 (TCE) and in 1992 (PCE).

By letter dated November 24, 2009, the Air Force notified Plaintiffs Tony and Kisha Horton ("the Hortons"), who lived off-base near Shaw AFB from 2006 to 2012, that "testing has revealed the presence of the chemical trichloroethylene (TCE) [and/or perchloroethylene (PCE)] in the

---

[1] After investigation, the Air Force concluded that the contamination of certain wells with TCE "is the likely result of aviation operations and maintenance from the 1950s to 1970s." ECF No. 52-1 at 10 (citing Ex. 23, Shaw AFB Bilateral Agreement/Deed Notice Information Sheet). The Air Force "believe[s] the likely source of PCE was the Base dry cleaners, which a private vendor operated from 1955 until 1968, when it burned down and was not rebuilt." *Id.* at 10-11.

2

groundwater underlying your property." ECF No. 52-15 at 2. On April 9, 2013, the Hortons filed this action alleging seven causes of action: (1) negligence, (2) gross negligence, (3) willful misconduct, (4) negligent failure to warn, (5) negligence per se, (6) private nuisance, and (7) trespass.[2] Their claims relate to Shaw AFB's use, disposal, or remediation of TCE or PCE; maintenance or monitoring of water systems; and public notification of contamination.

On June 21, 2013, the Government filed a motion to dismiss for lack of subject matter jurisdiction based on the discretionary function exception to the Government's waiver of sovereign immunity under the FTCA. ECF No. 7. After the court granted multiple requests for extensions of time to respond to the Government's motion to dismiss, the Hortons filed a response to the motion to dismiss on September 26, 2013, as well as a motion for jurisdictional discovery and a motion for leave to file an amended complaint. ECF No. 27. The Hortons contended they needed discovery to respond to the Government's motion to dismiss, in light of the Government's argument that the discretionary function exception applied. Despite significant shortcomings with the Hortons' request for jurisdictional discovery, the court allowed the Hortons to take one deposition pursuant to Rule 30(b)(6) by January 30, 2014, and limited the deposition to the following subject matters:

> 1. Confirming that the Government's informal production resulted in disclosure of all available documentation relating to policies, procedures, bans, or base orders known to have addressed use, disposal, or containment/clean up of TCE, PCE, or other products which may contain, break down into, or otherwise cause TCE and PCE contamination;

---

[2] The Hortons voluntarily dismissed their inverse condemnation claim on September 26, 2013. ECF No. 26.

3

    2.    Determining what information is known and by whom regarding any policies, procedures, bans or base orders on these subjects whether or not documentary evidence is or is not available; and

    3.    Determining what information or knowledge, if any, exists that any such policies, procedures, bans or base orders were subsequently violated by federal employees.

ECF No. 39 at 11-12. The court also provided additional procedures should that deposition reveal further information likely to exist relevant to whether the discretionary function exception applies. *Id.* at 12.[3] After the Rule 30(b)(6) deposition, the parties filed a status report on March 6, 2014, explaining that additional discovery was necessary in light of information revealed during the deposition. ECF No. 47. Also on March 6, 2014, the Government withdrew its motion to dismiss without prejudice to be refiled "at the conclusion of jurisdictional discovery." ECF No. 50.

On April 17, 2014, the Government filed the instant motion to dismiss for lack of jurisdiction. ECF No. 52. The Hortons filed a response on May 5, 2014 (ECF No. 54), to which the Government replied on May 15, 2014 (ECF No. 55).

**STANDARD**

**A. Motion to Dismiss.** A motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Fed. R. Civ. P. 12(b)(1), raises the fundamental question of whether a court has the authority to adjudicate the matter before it. "'[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 333

---

[3] The court denied the Hortons' motion for leave to file an amended complaint without prejudice. ECF No. 39. No additional motion for leave has been filed.

4

(4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (noting that "the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction"). "However, 'when the jurisdictional facts are inextricably intertwined with those central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery.'" *In re KBR, Inc.*, 744 F.3d at 334 (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

**B. Federal Tort Claims Act.** The Federal Tort Claims Act waives the sovereign immunity of the United States for civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). "But the FTCA's grant of federal jurisdiction is qualified by a number of exceptions." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012) (citing 28 U.S.C. § 2680). For example, waiver of immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is referred to as the discretionary function exception.

If the discretionary function exception applies, the court is without subject matter jurisdiction and must dismiss the action. *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011). Plaintiffs bear the burden of showing that the discretionary function exception does not apply. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The discretionary function exception applies where the government action at issue "'[1] involves an element of judgment or choice' [2] that is 'based on consideration of public policy.'" *Holbrook*, 673 F.3d at 345 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). An element of judgment or choice is not involved where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz* at 536.

If discretion is involved, the court must then determine whether the challenged action is based on considerations of public policy. *Indemnity Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). *See also United States v. Gaubert*, 499 U.S. 315, 325 (1991) ("[T]he purpose of the [discretionary function] exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.") (internal quotation marks omitted). "Rather than requiring a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function, . . . a reviewing court in the usual case [should] look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). *See also Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). "Where, however, a regulation authorizes or requires employee discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Holbrook*, 673 F.3d at 345 (quoting *Gaubert*, 499 U.S. at 324).

6

# DISCUSSION

The Hortons have failed to provide any evidence, even after jurisdictional discovery, that Shaw AFB violated any federal statute, regulation, or policy that prescribed a specific and mandatory course of action related to the use, disposal, or remediation of TCE or PCE; maintenance or monitoring of water systems; or public notification of contamination. In fact, the Hortons are unable to identify any specific federal statute, regulation, or policy that removed the discretion of Shaw AFB in the above-described activities.

Instead, the Hortons argue that Shaw AFB is still using TCE and/or PCE in violation of either (1) Executive Order 10014 of President Harry S. Truman, which directed federal agencies to cooperate with state and local authorities in preventing pollution of surface and underground waters (ECF No. 54 at 2-3, citing Exec. Order No. 10014, 13 Fed. Reg. 6601 (Nov. 4, 1948)); (2) "mandatory South Carolina regulations," which are not identified specifically (*id.* at 3); (3) two Air Force orders, which are not identified by the Hortons, but which the Hortons believe are implied by the Government's brief in support of its motion to dismiss[4] (*id.* at 5); and (4) regulations promulgated under the Resource Conservation and Recovery Act, 40 C.F.R. 261, App. VII at 931-

---

[4] The Hortons allege, "on information and belief," that the Air Force "issued an order banning [TCE's] use at the aircraft hangar base." ECF No. 54 at 5. Acknowledging that they "to-date have not been able to obtain a copy of this order and the United States denies that any such order was issued," the Hortons cite to the Government's brief as evidence of such an order: "'Personnel who worked at the [large aircraft maintenance hangar, Building 1200] indicated that TCE was a commonly-used solvent in years past, but that the Air Force had banned its use for some time.'" *Id.* (quoting ECF No. 52-1 at 9). Alternatively, the Hortons allege that "the Air Force issued an order limiting and controlling the use of TCE at the base." *Id.* Again, explaining that they were unable to obtain a copy of this order, the Hortons cite to the Government's brief as evidence: "'The Air Force . . . has never formally banned the use of TCE; instead, over recent years, it has limited and carefully controlled its use.'" *Id.* (quoting ECF No. 52-1 at 10).

934 ("RCRA"), which the Hortons contend have regulated TCE, PCE, DCE, vinyl chloride, and benzene as hazardous wastes since 1987 (*id.* at 6).[5]

It is the Hortons' burden to show that the discretionary function exception does not apply and to identify a specific statute, regulation, or policy that removed discretion from a federal agency's or employee's actions. *See Loughlin v. United States*, 286 F. Supp. 2d 1, 17 (D.D.C. 2004), *aff'd* 393 F.3d 155 (D.C. Cir. 2004) (explaining plaintiffs "cannot simply accuse the government of violating a law, regulation, or scientific standard in some general sense. The nature of the specific, mandatory constraint on its discretion must be clearly identified.") (internal quotation marks omitted). Citing to unidentified South Carolina regulations and Air Force orders, as well as to "regulations" promulgated under a variety of federal environmental statutes, is insufficient to satisfy that burden. *See id.* at 17 (finding plaintiffs' general reference to "assortment of environmental laws . . . [was] simply too amorphous and ill-defined to carry the day."). The only source identified with any specificity – Executive Order 10014 – fails to prescribe a specific and mandatory course of action because it clearly leaves discretion to federal agencies on how to work with states to preserve and improve surface and underground waters. Exec. Order No. 10014, 13 Fed. Reg. 6601 (Nov. 4, 1948).[6] In fact, the Tenth Circuit has found that Executive Order 10014

---

[5] In a footnote, the Hortons also suggest that the Air Force may have used TCE and PCE in violation of regulations promulgated under other federal environmental statutes: the Clean Water Act, 33 U.S.C. § 1311, 40 C.F.R. 403, App. B at 57-58 and the Safe Drinking Water Act, 42 U.S.C. § 300f, 52 Fed. Reg. 25,690 (July 8, 1987).

[6] President Truman directed:

the heads of the departments, agencies, and independent establishments of the executive branch of the Government to take such action as may be practicable, in cooperation with State and local authorities concerned with control of water pollution, to insure the disposal of sewage, garbage, refuse, and other wastes

8

"required the Air Force to take action only as 'practicable,' . . . [which] is a prime example of discretionary language [that] gave federal agencies a choice or judgment on what action to take, *if any*." *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998). The Hortons have, therefore, failed to identify any statute, regulation, or policy establishing that Shaw AFB lacked discretion in the activities alleged to have led to their injuries.

In support of their argument that Shaw AFB is still using TCE and/or PCE, the Hortons cite to the Rule 30(b)(6) deposition of Juvneal Quesade Salomon, an employee of Shaw AFB:

> Q. All right. Do the – the degreasing of the jet engines, does that – either now or in the past, did that involve the use of TCE, PCE, and other related chemicals?
>
> MR. BOWERS: Same objection.
>
> A [Mr. Salomon]. It-it's predominately trichloroethylene, sir, but perchloroethylene is mostly used in the dry cleaning business, so-
>
> Q. Okay.
>
> A. –but they're also –PCE is also in limited use –being used as a degreasing agent for solvents, yes sir.
>
> Q. Are those still used today?
>
> A. Which ones, sir, again?
>
> Q. TCE and/or PCE.
>
> A. Yes, sir. Un-huh.

---

accumulated in the course or as a result of Federal activities . . . for the preservation and improvement of the quality of surface and underground waters.

Exec. Order No. 10014.

9

ECF No. 54 at 3-4 (citing ECF No. 54-3 at 22-23, Salomon Dep. at 22: 6-21). As an attachment to its reply brief, counsel for the Government submitted a declaration by Mr. Salomon. In his declaration, Mr. Salomon states:

> As part of my investigation for my deposition, I searched the logistics data system to determine whether the Air Force was still an active user of TCE and found that TCE stock numbers currently exist in the logistics data system. My deposition answer was in reference to this information. I did not mean to imply that I had personal knowledge of any current TCE or PCE use at Shaw Air Force Base. I have no personal knowledge of such current or recent use, and I confirmed with the Base's Hazardous Material and Waste Manager that these chemicals are not being used at the Base nor have they been used in recent years.

ECF No. 55-1 at 3 (Salomon Decl. ¶ 2). He further states that "at Shaw Air Force Base[,] . . . [t]he only documentation that we could find reflected off-base disposal of small quantities of TCE in May 1991 and February 1996." *Id.* at ¶ 3. Mr. Salomon's testimony, along with his declaration, demonstrates that the Air Force still possesses TCE but does not show that Shaw AFB presently uses either TCE or PCE.[7] The Hortons have failed to provide any evidence of current use of TCE or PCE at Shaw AFB. The most recent evidence of disposal shows that Shaw AFB disposed of some TCE in February 1996, but the Hortons do not argue that Shaw AFB violated any environmental regulation by the manner in which it was disposed.

As to the second part of the analysis, the Government contends that the challenged actions are subject to policy analysis:

> The military's conduct regarding chemical use and disposal, water supply monitoring, environmental remediation, and public notification are necessarily

---

[7] The Hortons did not file a sur-reply to address Mr. Salomon's declaration. The court has read Mr. Salomon's deposition and declaration in their entirety and finds that Mr. Salomon's declaration clarifies, rather than contradicts, his prior deposition testimony. Questions posed to Mr. Salomon during his deposition about current TCE and/or PCE usage were ambiguous as to whether they were specific to Shaw AFB or to the Air Force in general.

> intertwined with, and subject to, the policies underlying the military's broader mission, as embodied in the general missions of the United States Air Force and the specific missions of units at Shaw Air Force Base.

ECF No. 52-1 at 29. *See also id.* at 4-6 (discussing mission of the Air Force and history of Shaw AFB). The Hortons do not respond to the Government's argument that the challenged actions are subject to policy considerations.

Other courts have recognized that "[t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns." *OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir. 2002). *See also Ross v. United States*, 129 F. App'x 449, 451 (10th Cir. 2005) (explaining that the Tenth Circuit previously recognized that "[t]he broader public and military policies at issue allowed the Air Force 'to place security and military concerns above any other concerns,' including – unfortunately – concerns about hazardous waste disposal."); *Aragon,* 146 F.3d at 826 (finding that "the Air Force's actions involved policy choices of the most basic kind" and that it "weigh[ed] its groundwater protection policies against broader public and military policies") (internal quotation marks omitted); *Oxendine v. United States*, No. 3:08-4036-CMC-PJG, 2009 WL 3757517, *5 (D.S.C. Nov. 9, 2009) ("the Air Force's actions regarding the conduct of military operations is susceptible to policy analysis."). Courts have also found that decisions concerning remediation of contamination, maintenance or monitoring of water systems, and public notification of contamination are subject to policy considerations. *See, e.g.*, *Ross*, 129 at 452 (determining Air Force's decision of whether and how to warn neighbors of contamination of ground water by TCE buried by Air Force implicate policy concerns and fall under discretionary function exception); *Welsh v. United States Army*, No. 08–3599 RS, 2009 WL 250275, at *9 (N.D. Cal. Feb. 3, 2009) ("Army's investigation, remediation and reuse decisions . . . [are] kinds of

judgments [that] implicate policy choices and decisions of the type that Congress intended to protect from judicial second guessing"); *Greenhouses v. United States*, 878 F. Supp. 917, 928 (N.D. Tex. 1995) ("When officials contemplate the plethora of issues surrounding the decisions [under the IRP] concerning investigation, monitoring and public notification, these officials directly engage in making public policy.").

The Hortons have failed to advance a single argument to counter the Government's argument that Shaw AFB's decisions concerning the use, disposal, or remediation of TCE or PCE; maintenance or monitoring of water systems; or public notification of contamination were grounded in public policy. In light of the case law cited above, the court finds that the alleged actions were susceptible to policy analysis and fall within the discretionary function exception.

Because the Hortons have failed to show that the challenged actions did not involve an element of judgment or choice that were based on considerations of public policy, the Hortons' claims are barred by the discretionary function exception. The Complaint is, therefore, dismissed.

## CONCLUSION

For reasons stated above, the Government is immune from suit on the Hortons' claims pursuant to 28 U.S.C. § 2680(a). Having no subject matter jurisdiction, the Government's motion to dismiss pursuant to Rule 12(b)(1) is, therefore, granted. The Hortons' claims are dismissed with prejudice.

**IT IS SO ORDERED.**

                                          S/ Cameron McGowan Currie
                                          CAMERON MCGOWAN CURRIE
                                          Senior United States District Judge

Columbia, South Carolina
June 19, 2014